IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES DOUGLAS GRIFFITH,
      Petitioner,

vs.                            Case No.:  3:11cv288/MCR/EMT

KENNETH S. TUCKER,
      Respondent.
_____/

**REPORT AND RECOMMENDATION**

      This cause is before the court on Petitioner's petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2254 (docs. 1, 2).  Respondent filed an answer and relevant portions of the state court record (doc. 14).  Petitioner filed a reply (doc. 17).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 14).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2006-CF-4752, with one count of lewd and lascivious molestation (offender 18

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 14).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

years of age or older, victim 12 years of age or older, but less than 16 years of age) (Ex. A).
Following a jury trial, he was found guilty as charged (*id.* at 14, Ex. B).  On May 15, 2007,
Petitioner was sentenced to seven (7) years of imprisonment followed by a period of eight (8) years
of probation, with pre-sentence jail credit of 35 days (Ex. A at 44–85).  He was sentenced "as a sex
offender under FS 943.0435 (required to register), with all statutory requirements & with active GPS
monitor while on probation.  Subject to Jessica Lunsford Act & to be evaluated under Jimmy Ryce
Act." (*id.* at 79).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of
Appeal ("First DCA"), Case No. 1D07-2784.  Petitioner's counsel filed a brief, pursuant to Anders
v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support
the contention that reversible error occurred in the trial court (Ex. D).  Petitioner filed a pro se initial
brief (Ex. E).  The First DCA affirmed the judgment per curiam without written opinion on
September 12, 2008, with the mandate issuing November 13, 2008 (Exs. F, I).  Griffith v. State, 993
So. 2d 518 (Fla. 1st DCA 2008) (Table).  Petitioner did not seek further review.

On November 20, 2008, Petitioner filed a motion to mitigate sentence, pursuant to Rule
3.800(c) of the Florida Rules of Criminal Procedure (Ex. J).  The state circuit court summarily
denied the motion on December 4, 2008 (Ex. K).

On April 6, 2009, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850
of the Florida Rules of Criminal Procedure (Ex. L at 1–49).  The state circuit court summarily denied
the motion in an order rendered January 6, 2011 (*id.* at 50–188).  Petitioner appealed the decision
to the First DCA, Case No. 1D11-0690 (*id.* at 189–90).  The First DCA affirmed the decision per
curiam without written opinion on May 13, 2011, with the mandate issuing June 8, 2011 (Exs. M,
N).  Griffin v. State, 61 So. 3d 1116 (Fla. 1st DCA 2011) (Table).

On July 19, 2009, while Petitioner's Rule 3.850 motion was pending, he filed a Motion for
Substitution and Disqualification of Judge, seeking to disqualify the trial judge from the
postconviction proceedings (Ex. O at 1–5).  The trial judge summarily denied the motion as legally
insufficient (*id.* at 6–7).  Petitioner appealed the decision to the First DCA, Case No. 1D09-6013 (*id.*
at 8–9, Ex. P).  The First DCA construed Petitioner's brief as a petition for writ of prohibition (Ex.

Q).  The First DCA denied the petition on the merits on September 27, 2010 (Ex. R).  Griffith v. State, 45 So. 3d 464 (Fla. 1st DCA 2010) (Table).

Petitioner filed the instant federal habeas action on June 13, 2011 (doc. 1).  Respondent does not contest the timeliness of the petition (doc. 14 at 3).

II.      STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529

U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely

on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L.

Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS

Ground One:  Counsel failed to raise proper objection to partial closure of trial and failed to preserve issue for appellate review."

Petitioner asserts that prior to trial, the trial judge ordered all spectators, except family members of Petitioner and the victim, to leave the courtroom until the victim completed his testimony (doc. 1 at 4–5; doc. 2 at 5–6).[3]  He asserts defense counsel failed to object to the closure and argue that the four prerequisites for closure, articulated by the Supreme Court in Waller v. Georgia, 467 U.S. 39, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984), were satisfied (id.).  Petitioner contends counsel's failure to object and preserve the issue for appeal constituted deficient performance (id.).

Respondent appears to concede Petitioner exhausted this claim in the state courts (doc. 14 at 4).  Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (id. at 4–8).

1.   Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  Id. at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. Id. at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus

---

[3] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Id. at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  Id. (quoting Strickland, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal. *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground 1 in his Rule 3.850 motion (Ex. L at 5). In the state circuit court's written decision denying the claim, the court correctly stated the deficient performance and prejudice prongs of the Strickland standard as the applicable legal standard (Ex. L at 50). The court adjudicated the claim as follows:

> During the Defendant's trial, the court instructed the people present that during the victim's testimony only family members of either the Defendant or the victim would be allowed to remain in the courtroom. [reference to trial transcript]. The Defendant claims that this partial closure of the trial constituted reversible error, but his counsel did not object.

> Initially, the Court finds that counsel was not ineffective for failing to object to the Court's instruction regarding who may remain in the courtroom during the victim's testimony. See Kovaleski v. State, 1 So. 3d 254 (Fla. 4th DCA 2009) (Holding that the findings required by Waller v. Georgia, 467 U.S. 39 (1984) do not apply to a partial closure under section 918.16).

Furthermore, the Florida Supreme Court has made it clear that where a defendant alleges ineffective assistance of trial counsel the "proceeding" at issue is the trial, not any possible appeal from the trial proceedings.  See Carratelli v. State, 961 So. 2d 312 (Fla. 2007).  Therefore, in order to prevail on a claim of ineffective assistance of trial counsel, the Defendant must demonstrate that, but [for] counsel's purported errors, the result of the trial would have been different.  See also, Strobridge v. State, 1 So. 3d 1240 (Fla. 4th DCA 2009).

The Court finds that the Defendant was not prejudiced by the partial closure under section 918.16, Florida Statutes.  In other words, there is not a reasonable probability the result of the proceeding would have [been] different had the partial closure of the courtroom not occurred.  The partial closure of the courtroom does not undermine confidence in the outcome.

(Ex. L at 52–53).

Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. M).

In Waller, the Supreme Court held that the Sixth Amendment right to a public trial extends beyond the actual proof at trial and applies to pre-trial suppression hearings; therefore, prior to excluding the public, over the objection of the accused, the test set out in Press-Enterprise Co. v. Superior Court, 464 U.S. 501 (1984), must be satisfied.  Waller, 467 U.S. at 43, 47.  Press-Enterprise involved a First Amendment challenge to the complete closure to the public and press of jury voir dire in a criminal trial.  464 U.S. at 503.  The Supreme Court articulated the standard that must be applied when the trial court excludes the public from criminal trials:

"[T]he circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one.  Where . . . the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." . . . The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.  The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

Press-Enterprise Co., 464 U.S. at 509 (quoting Glove Newspaper Co. v. Superior Court, 457 U.S. 596, 606–07, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982)).

Fairly recently, the Supreme Court analyzed whether a defendant's Sixth Amendment right to a public trial was violated when the trial court excluded, over the defendant's objection, the defendant's uncle, who was the sole courtroom observer, from voir dire.  *See* Presley v. Georgia, — U.S. —, 130 S. Ct. 721, 722–24, 175 L. Ed. 2d 675 (2010).  The Court held that Press-Enterprise and Waller clearly established that the Sixth Amendment right to a public trial extends to jury voir dire.  Presley, 130 S. Ct. at 723.  The Court then applied the four-part Waller standard to the facts of the case and held that a Sixth Amendment violation occurred because there was nothing in the record showing that the trial court considered all reasonable alternatives to closure.  *Id.* at 725.

In the instant case, Petitioner asserts that only a partial closure occurred, that is, only public observers who were not members of Petitioner's or the victim's families were asked to leave the courtroom (doc. 1 at 4–5; doc. 2 at 5–6).  As previously discussed, Waller held that the four-part test set forth in Press-Enterprise applied to exclusions of all public observers over a defendant's objection.  Until Presley, the Supreme Court had not applied the Waller/Press-Enterprise test to partial closures.  Indeed, prior to Presley, several of the circuit courts of appeals, including the Eleventh Circuit, did not extend the Waller standard to partial closings.  *See* Douglas v. Wainwright, 739 F.2d 531, 532–33 (11th Cir. 1984) (holding that a court need not satisfy the elements of the Waller test in the event of a partial closure).

When denial of a public trial is the basis for a claim of ineffective assistance of counsel, prejudice to the outcome must be shown:

> [T]o prevail on his ineffective assistance claim stemming from the failure of his trial counsel to raise an objection to the closing of the courtroom, [a claimant] must show a reasonable probability of a different result in the trial if counsel had objected.

Purvis v. Crosby, 451 F.3d 734 (11th Cir. 2006).  The "outcome" is the determination of guilt, not the ruling on the objection to closure of the courtroom.  "When we are considering defective performance at the guilt stage, 'the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"  *Id.* (quoting Strickland, 466 U.S. at 695).

In Purvis, the federal habeas petitioner sought to have his conviction for child molestation set aside because his trial counsel did not object when the state trial court cleared the courtroom of

most of the public during the young victim's testimony.  451 F.3d at 735.  The Eleventh Circuit determined that the most efficient way to decide the ineffective assistance of counsel claim was to "assume away three subsidiary issues and get straight to the prejudice question."  *Id.* at 738.  The court assumed that the closing of the courtroom during the victim's testimony was constitutional error under <u>Waller</u>, thereby putting aside any questions about whether it was proper under the test set out in the <u>Waller</u> decision.  *Id.*  The court also assumed that trial counsel's failure to object to the partial closure of the courtroom was "outside the wide range of professionally competent assistance," thereby putting aside any questions about the performance prong of the ineffective assistance of counsel claim.  *Id.* (citing <u>Strickland</u>, 466 U .S. at 689).  Finally, the court assumed that the state post-conviction court's phrasing of the prejudice test as whether there is "a reasonable likelihood" that counsel's error "impacted the outcome of the trial," instead of using the more technically accurate "a reasonable probability of a different result" standard, took the case outside the scope of 28 U.S.C. § 2254(d)(1).  <u>Purvis</u>, 451 F.3d at 738 (citing <u>Strickland</u>, 466 U.S. at 694).  This third assumption put aside the question of whether the court owed any deference to the state court decision.

Even with those three assumptions, the Eleventh Circuit reached the same result as the state court; the habeas petitioner lost on the ineffective assistance claim because he has not established that he was prejudiced by his trial counsel's failure to object to the closure of the courtroom.  <u>Purvis</u>, 451 F.3d at 738.  The court reiterated the prejudice standard applicable to claims of defective performance at the guilt stage:  "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* (citing <u>Strickland</u>, 466 U.S. at 695).  The court then analyzed Purvis' claim as follows:

> Purvis cannot show that an objection from his counsel would have caused the factfinder to have a reasonable doubt about his guilt.  If counsel had objected in a timely fashion and had persuaded the trial judge not to partially close the courtroom, there is no reason to believe that would have changed the victim's testimony in a way which would have created a reasonable doubt in the jury's mind.  The victim could just as well have been a more sympathetic or credible witness if forced to testify publicly.  We do not know, and when we do not know the party with the burden loses, and here that party is Purvis.  *See* <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068 ("The defendant must show. . . .").

> Against this logic Purvis argues that an objection by his trial counsel would have
> preserved the issue for appeal and led to a reversal of his conviction, which would
> have been a different result from the affirmance that occurred.  There are two flaws
> with this argument.  One is its assumption that the trial judge would have overruled
> an objection if one had been made.  There is as much reason to believe that pointing
> out the error of his ways to the trial judge would have caused him to mend those
> ways, thereby depriving Purvis of the issue on appeal.  The second and more
> fundamental flaw in this argument is that it focuses on the outcome of the appeal, not
> of the trial.  The Supreme Court in Strickland told us that when the claimed error of
> counsel occurred at the guilt stage of a trial (instead of on appeal) we are to gauge
> prejudice against the outcome of the trial:  whether there is a reasonable probability
> of a different result at trial, not on appeal.  *Id.* at 694–95, 104 S. Ct. at 2068–69.

*Id.* at 738–39.  The Eleventh Circuit went on to reject Purvis' contention that he was not required

to establish prejudice because an error in removing the public from the courtroom during a trial is

a "structural defect." *Id.* at 739.  The court assumed for purposes of discussion that a partial closure

of the courtroom was a structural error or defect, but determined that because the ineffective

assistance circumstances did not fall under the three "exceptional circumstances" identified by the

Supreme Court in Strickland as warranting a presumption of prejudice, Purvis was required to

establish prejudice resulting from his counsel's error.[4]  *Id.* at 740–43.

In the instant case, at the time of Petitioner's trial in 2007, Presley, which extended Waller

to partial closures, had not been decided.  Petitioner's trial counsel was thus not ineffective for

failing to anticipate the change in the law.  *See* LeCroy v. Sec'y, Fla. Dep't of Corr., 421 F.3d 1237,

1261 n. 27 (11th Cir. 2005) (citation omitted); Tarver v. Hopper, 169 F.3d 710, 714 (11th Cir. 1999);

Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994); *see also* Strickland, 466 U.S. at 689

("A fair assessment of attorney performance requires that every effort be made to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and

to evaluate the conduct from counsel's perspective at the time.").

Furthermore, even if this court assumed for purposes of discussion that the partial closing

of the courtroom during the victim's testimony was constitutional error under Waller, and that

---

[4] Those three "exceptional circumstances" are the following:  (1) "actual or constructive denial of the assistance of counsel altogether," (2) "various kinds of state interference with counsel's assistance," and (3) where counsel "is burdened by conflicting interests arising from multiple representation situations," and counsel's performance is affected by the conflict.  Purvis, 451 F.3d at 740–41 (citing Strickland, 466 U.S. at 692).

defense counsel's failure to object to the closure was "outside the wide range of professionally competent assistance," Petitioner failed to show that the state court's determination that he failed to demonstrate prejudice was unreasonable.  Petitioner has alleged nothing to show that the presence of public observers would have changed the child victim's testimony in a way which would have created a reasonable doubt about Petitioner's guilt in the jury's mind.  The victim could just as well have been a more sympathetic or credible witness if forced to testify publicly.  Because Petitioner failed to demonstrate a reasonable probability that the result of his trial would have been different if counsel had objected to closure of the courtroom during the victim's testimony, the state court's denial of his claim was not an unreasonable application of <u>Strickland</u>.

     B.    <u>Ground Two: "Counsel failed to impeach State's chief witness by showing perjury by contradictory statements paramount to credibility."</u>

Petitioner asserts the victim made contradictory statements in his pretrial "utterings" and his trial testimony (doc. 1 at 5; doc. 2 at 6–8).  Petitioner asserts the victim testified at trial that Petitioner rolled him over on his side, Petitioner attempted to penetrate the victim's anus with his penis but was unable to do so "because I guess he's too old," so Petitioner stopped and rolled the victim back onto his back (doc. 2 at 7).  Petitioner states this testimony was inconsistent with the victim's statement to police that Petitioner stopped attempting to penetrate his anus when he (the victim) started twitching (doc. 2 at 7, Ex. B).  Petitioner asserts the victim's trial testimony was also inconsistent with the prosecutor's description of the events in the State's Notice of Intent to Use Other Crimes, Wrongs, or Acts of the Defendant, in which the prosecutor stated, "The victim claimed he was able to thwart the commission of the sex act by moving away." (doc. 2 at 7, Ex. C).  Petitioner contends the victim's credibility was pivotal to the case, because the jury was essentially required to choose between the victim's and Petitioner's competing versions of the truth (doc. 1 at 5; doc. 2 at 6–8).  He contends if defense counsel had revealed the inconsistencies, the jury would have had reasonable doubt as to his guilt, and the result of his trial would have been different (<i>id.</i>).

Respondent appears to concede Petitioner exhausted this claim in the state courts (doc. 14 at 8–9).  Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (<i>id.</i>).

     1.    Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

      2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground 2 in his Rule 3.850 motion (Ex. L at 5–6).  The state circuit court adjudicated the claim as follows:

> The Defendant claims that his counsel was ineffective for failing to impeach the victim's testimony with allegedly prior inconsistent statements.  The Defendant asserts that, in response to a question as to why the Defendant could not penetrate the victim's "butt" with his penis, the victim testified "because I guess he's too old." [reference to trial transcript].  The Defendant claims that trial counsel should have impeached the victim's trial testimony with the victim's prior statement to police that the victim started twitching and the Defendant stopped.
>
> The Court finds that this claim should be denied.  "A prior statement of a witness is admissible to impeach credibility only if it is in fact inconsistent with the trial testimony."  Charles W. Ehrhardt, Florida Evidence, § 608.4 at 542 (2007 ed.); <u>see also</u>, <u>James v. State</u>, 765 So. 2d 763 (Fla. 1st DCA 2000).  Counsel cannot be considered ineffective for failing to attempt to impeach the victim's credibility by seeking to introduce the prior statements of the victim that the Defendant stopped after the victim started twitching, as that is *not* in fact inconsistent with the victim's trial testimony where he speculated that the Defendant failed to penetrate the victim due to the Defendant's advanced age.
>
> The other statement the Defendant attributes to the victim, that [the] victim "was able to thwart the commission of the sex act by moving away," was in fact an assistant state attorney's characterization of the victim's behavior.  This is demonstrated by the Defendant's own exhibit.  <u>See</u> <u>Defendant's Exhibit C</u>; <u>Attachment 4</u>.  Clearly, a witness cannot be impeached with an *attorney's* characterization of events that occurred relating to the victim made when the attorney is arguing to the court.  Furthermore, even if this characterization of the events by the assistant state attorney could be considered a "statement," it is not truly inconsistent with the victim's testimony at trial.  The victim's statement at trial concerns speculation as to *why* the Defendant ultimately failed to penetrate the victim, not a detailed explanation as to the sequence of events.  Therefore, counsel was not ineffective as alleged by the Defendant for not attempting to impeach this testimony with these purported "prior inconsistent statements."

(Ex. L at 53–54).

Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. M).

The state court's finding that the victim's statement to police was not in fact inconsistent with his trial testimony is supported by the record.  In Officer Mark Aldridge's statement of probable cause, Aldridge stated, "[The victim] advised that James Griffith also tried to stick his penis in his butt, but he started twitching and James Griffith stopped." (Ex. A at 2–4).  The victim's trial testimony, "He [Petitioner] tried to penetrate me, and then he couldn't.  So he stopped." (*see* Ex. B at 33) is not in fact inconsistent with his reported statement to Officer Aldridge.  Additionally, as the state court determined, the prosecutor's characterization of the victim's description of the events included in the prosecutor's notice of intent to use similar fact evidence (*see* Ex. A at 5–8) did not constitute a statement by the victim for purposes of the evidentiary rule permitting impeachment with prior inconsistent statements.  Therefore, counsel's failure to impeach the victim with the prior statements was not unreasonable.  Further, in the absence of a legal basis for counsel to use the prior statements for impeachment, Petitioner failed to show a reasonable probability of a different outcome at trial had counsel attempted to use the statements, especially since the trial court would have properly sustained an objection by the prosecutor had counsel attempted to pursue this line of cross-examination.

Petitioner failed to demonstrate that the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland.  Therefore, he is not entitled to federal habeas relief on Ground Two.

C.    Ground Three:  "Public Defender failed to interview, depose and/or subpoena relevant witnesses who were available for trial."

Petitioner asserts he provided defense counsel with a list of fifteen (15) witnesses necessary to the defense, but counsel failed to interview them or subpoena them for trial (doc. 1 at 6; doc. 2 at 8–10).  Petitioner identifies the witnesses and the relevancy of their proposed testimony as follows:

Sean Ross, Jason McLamb, Jamie Lee Horn, Robert Dubois, Timothy Dubois, Vincent Poly, Jeffrey Pruitt, Johnny Whitfield, Dustin Young, David Ray, and Matthew Ray, all of whom were teenage boys:  Petitioner contends they would have testified they were frequent overnight visitors at Petitioner's home and engaged in fishing trips and other "wholesome" activities with Petitioner.  Petitioner argues their testimony would have undermined the State's theory that he was a sexual predator preying on the trust of young boys.

Lisa Cosby:  Petitioner contends Ms. Cosby could have testified regarding the victim's reputation for dishonesty and other adolescent misbehavior.

Julia Bainter Poly, mother of Johnny Whitfield:  Petitioner contends Ms. Poly could have testified that the victim stole her son's shoes and was not allowed to spend the night in their home.

Rhonda Pouliot, Petitioner's cousin and life-long acquaintance:  Petitioner asserts Ms. Pouliot would have testified to Petitioner's reputation as an honest, Christian gentleman and diligent volunteer who ministered to people in the Baptist church for many years.

Darlene Dubois:  Petitioner asserts Ms. Dubois and her adolescent children (one daughter and three sons) lived with Petitioner for an extended period of time, and Ms. Dubois would have testified to Petitioner's reputation for honesty and decency.

Hope Lorraine Jones, the victim's mother:  Petitioner asserts Ms. Jones could have testified that her son lied on a regular basis, used drugs, and committed various thefts.  He contends although she would have been a reluctant witness, she would have undermined the victim's credibility.

(doc. 2 at 8–9).  Petitioner contends the testimony of these witnesses could have created reasonable doubt in the minds of the jurors, and counsel's failure to present their testimony could have affected the outcome of his trial (*id.* at 10).

Respondent appears to concede Petitioner exhausted this claim (doc. 14 at 9–10). Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.*).

        1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.


        2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground 3 in his Rule 3.850 motion (Ex. L at 6).  The state circuit court adjudicated the claim as follows:

The Defendant asserts his counsel was ineffective for failing to interview and subpoena certain witnesses for trial.  The Court finds that this claim should be denied.

First, the Defendant asserts his counsel was ineffective for failing to call a group of teenage boys who were "frequent over night visitors at defendant's home, engaged in fishing trips and other wholesome activities." The Defendant argues their testimony "would have undermined State's theory defendant was a sexual predator preying on the trust of young boys." The Court finds that such evidence would not be admissible.[FN 2: "Evidence of specific actions may not be offered as the basis of an inference that because a person acted in that manner in the past, the person acted in the same manner on the occasion in question." Charles W. Ehrhardt, Florida Evidence, § 405.3 at 294–295 (2007 ed.).]

Second, the Defendant asserts his attorney should have called a witness named Lisa Cosby, who the Defendant claims "could have testified as to [victim's] reputation for dishonesty and other adolescent misbehavior." Regarding this claim, the Court finds that the Defendant's counsel introduced the testimony of Tyler Lake, who testified that the victim had a reputation among other children for being a dishonest person. [reference to trial transcript]. Therefore, any testimony regarding the victim's reputation for dishonesty in the community would have been cumulative to Tyler Lake's testimony. Because evidence of the victim's reputation for dishonesty had already been presented to the jury, counsel cannot be considered ineffective for failing to introduc[e] repetitive testimony.

Regarding any possible testimony as to the victim's "other adolescent misbehavior," specific and unrelated instances of misconduct would not be admissible in evidence, or to impeach the victim's testimony, unless they resulted in a conviction.

The First District Court of Appeal has instructed that "Section 90.609(1) permits credibility attacks in the form of evidence that the witness has a poor reputation for truthfulness, but if does not authorize proof of the witness' character for truthfulness or untruthfulness by evidence of specific acts." Pantoja v. State, 990 So. 2d 626, 629 (Fla. 1st DCA 2008). However, "Section 90.610 provides for impeachment based on a witness' conviction for a crime punishable by more than one year in prison or a crime that involves dishonesty or a false statement. Other than this limited exception, the Evidence Code does not provide for impeachment of a witness by evidence of prior acts of misconduct." Id. The Defendant does not contend that the victim was ever convicted of any felony or crime of dishonesty.

Third, the Defendant claims his counsel was ineffective for failing to call Julia Bainter Poly. Poly would have testified that the victim, at some point in time, stole her son's shoes. Clearly for the reasons previously articulated by the court, such evidence would have been inadmissible at trial. The Defendant does not allege the victim was convicted of any offense relating to such alleged misconduct. Furthermore, even if such evidence were admissible, there is no reasonable

probability that this evidence would have lead [sic] to a different result.  Evidence was already before the jury that the victim had stolen a video game controller from the Defendant.  [reference to trial transcript].

Fourth, the Defendant claims that his counsel should have called Rhonda Pouliot, who could have "testified to James Griffith's reputation as an honest, Christian gentleman and diligent volunteer. . . ." Fifth, the Defendant alleges that his counsel erred by not calling Darlene Dubois, who could have testified "to defendant's reputation for honesty and decency."  Regarding these two witnesses, there is no reasonable probability that any attempt by counsel to introduce [ ] such character evidence could have led to a different result.  As the First District Court of Appeal has explained:

> [B]ecause a person's tendency, or lack thereof, to commit acts of child molestation is not something that a community tends to have knowledge of, testimony concerning a person's reputation for having such a trait is inherently unreliable and distinguishable from traditionally admissible reputation evidence.

> Hendricks v. State, 34 So. 3d 819, 825–26 (Fla. 1st DCA 2010).

Finally, the Defendant asserts that his counsel should have called the mother of the victim, who could have testified "to her son lying on a regular basis, his use of drugs and various thefts."  This claim should be denied for the reasons previously articulated by the Court.  Pantoja v. State, 990 So. 2d 626, 629 (Fla. 1st DCA 2008).  The credibility of a witness cannot be challenged by recounted specific experiences but rather it must be based on the reputation of the witness in the community.  Lott v. State, 695 So. 2d 1239 (Fla. 1997).  Again, the Defendant cannot demonstrate prejudice because evidence of the victim stealing and his reputation for dishonesty in the community was already before the jury.

(Ex. L at 54–56).

Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. M).

This court must abide by the state court's interpretation of state law.  *See* Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).  Therefore, this court is bound by the state court's determination that testimony of the teenage boys, suggesting that because they spent the night with Petitioner and engaged in "wholesome" activities with him, Petitioner did not molest the victim, was

inadmissible.  Likewise, the court is bound by the state court's determination that evidence of the victim's prior misbehavior or bad acts (through the proposed testimony of Lisa Cosby, Julia Bainter Poly, and Hope Lorraine Jones) was inadmissible impeachment under Florida law.  *See* Pantoja, 990 So. 2d at 629.  This court is also bound by the state court's determination that evidence of Petitioner's reputation for honesty and decency (through the proposed testimony of Rhonda Pouliot and Darlene Dubois) was inadmissible under Florida law.  *See* Hendricks, 34 So. 3d at 825–26.  In light of the court's determinations that this evidence was inadmissible, defense counsel was not deficient for failing to investigate or present it.

Additionally, as the state court found, testimony regarding the victim's reputation for dishonesty in the community would have been cumulative of Christopher Tyler Lake's testimony (*see* Ex. B at 117).  The jury heard, through Tyler Lake's testimony, that the victim had a reputation among other children for being a dishonest person (*id.*).  The jury also heard Amber Lake's testimony that the day of the molestation, the victim stole a video game controller from Petitioner (*id.* at 111–12); and the victim admitted this to the jury during cross-examination by defense counsel (*id.* at 43).  Despite this testimony, the jury believed the victim's description of the molestation.  Petitioner failed to show a reasonable probability that the jury would have discredited the victim's testimony had they heard Lisa Cosby's cumulative testimony that the victim had a reputation for dishonesty.  Therefore, the state court's adjudication of Ground Three was reasonable under Strickland.

    D.    <u>Ground Four:  "Counsel's inaction during closing arguments—failure to object to prosecutor's remarks waived appellate review of issue."</u>

Petitioner contends defense counsel was ineffective for failing to object to the following remarks by the prosecutor during closing arguments:  (1) remarks that sought to "impugn defense counsel's credibility" and "denigrate the defense as a 'white rabbit'," (2) remarks that characterized Petitioner as a predator, where there was no evidence suggesting such, and (3) remarks about the lack of Petitioner's denials that he committed the crime (doc. 1 at 6; doc. 2 at 10–13).

Respondent appears to concede Petitioner exhausted this claim (doc. 14 at 10).  Respondent contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 10–16).

1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground 4 in his Rule 3.850 motion (Ex. L at 6).  The state circuit court adjudicated the claim as follows:

> The Defendant argues that his counsel was ineffective for failing to object to comments made by the prosecutor during closing arguments.[FN 3:  The Court would again note that where a defendant alleges ineffective assistance of trial counsel, the "proceeding" at issue is the trial, not any possible appeal from the trial proceedings.  <u>See</u> <u>Carratelli v. State</u>, 961 So. 2d 312 (Fla. 2007).]  Specifically, the Defendant argues that counsel was ineffective for failing to object to the assistant state attorney describing the Defendant's theory that the victim fabricated the alleged crime to avoid being punished for stealing a video game controller as a "white rabbit."  The Defendant also argues that [ ] counsel should have objected when the prosecutor referred to the Defendant as being in the "perfect position to be a predator."  Finally, the Defendant argues that counsel was ineffective not object [sic] to comments that the Defendant did not, initially, deny the allegations when confronted by the victim's step father or during a voluntary police interview [reference to transcript of interview], but offered other various statements.  The Court would note that this is *not* a case where the prosecutor commented on the Defendant's post-arrest silence.  Rather, the prosecutor presented argument as to the Defendant's prior *pre-arrest statements.* [reference to trial transcript].   "The prosecutor's comments were no more than a suggestion to the jury that [defendant's] statements were not the comments of an innocent man."  <u>Rao v. State</u>, No. 4D07-4879, 2010 WL 5093132, at *4 (Fla. 4th DCA Dec. 15, 2010).
>
> Having reviewed the transcript of the State's closing arguments, the Court finds that counsel was not ineffective for failing to object to the State's arguments at issue during closing. [reference to trial transcript].  The Florida Supreme Court has explained that "[t]he proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." <u>Bertolotti v. State</u>, 476 So. 2d 130 (Fla. 1985).  Attorneys are permitted wide latitude in closing argument.  <u>Gore v. State</u>, 719 So. 2d 1197 (Fla. 1998).  As the record shows that the State's comments at issue were not improper, counsel was not ineffective for failing to object to them.

(Ex. L at 57–58).

Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. M).

To assess whether defense counsel performed unreasonably by failing to object to statements by the prosecutor, the court must determine whether counsel had a meritorious basis for doing so. Under Florida law, the standard for reviewing prosecutorial comments is the following:

> Wide latitude is permitted in arguing to a jury. Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. The control of comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown. A new trial should be granted when it is "reasonably evident that the remarks might have influenced the jury to reach a more severe verdict of guilt than it would have otherwise done." Each case must be considered on its own merits, however, and within the circumstances surrounding the complained-of remarks.

Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982) (quoting Darden v. State, 329 So. 2d 287, 289 (Fla. 1976)) (other citations omitted). This state rule is essentially the same as the federal due process standard governing allegedly improper argument by the prosecution. A prosecutor may argue both facts in evidence and reasonable inferences from those facts. *See* Tucker v. Kemp, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted). But if the evidence is too insubstantial to support a reasonable inference, the prosecutor's comment will be deemed improper. *Id.* at 1507. Prosecutors must observe the distinction between the permissible practice of arguing evidence and suggesting inferences which the jury may reasonably draw from it, and the impermissible practice of arguing suggestions beyond the evidence. *See* United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992) (citation omitted).

Further, the prosecutor is not limited to a bare recitation of the facts; she may comment on the evidence and express the conclusions she contends the jury should draw from the evidence. United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984). A prosecutor may comment on the uncontradicted or uncontroverted nature of the evidence and may point out that there is an absence of evidence on a certain issue during closing argument to the jury. *See* White v. State, 377 So.2d 1149 (Fla. 1980). Additionally, prosecutorial comment upon a general lack of defense evidence is permissible. *See* Smiley v. State, 395 So.2d 235 (Fla. 1st DCA 1981).

Ineffective assistance of counsel may be established where defense counsel fails to object to the prosecutor's arguments which invite the jury to consider constitutionally protected silence as evidence of the defendant's guilt, *see* Fugate v. Head, 261 F.3d 1206, 1223 (11th Cir. 2001).

However, the "silence" at issue must be occasioned as an exercise of the right to remain silent during a custodial interrogation.  *See* <u>United States v. Venditti</u>, 533 F.2d 217, 220 (5th Cir. 1976) (prosecutor did not improperly comment on defendant's silence at the time he discussed tax records with accountant, because the " silence" at issue was not occasioned as an exercise of the right to remain silent during custody).[5]

In the instant case, the prosecutor's describing the defense's theory, that the victim fabricated the molestation to avoid punishment for stealing a video game controller, as a "white rabbit" was proper.  On cross-examination by defense counsel, the victim admitted that he stole a video game controller from Petitioner earlier in the day he was molested (*see* Ex. B at 43, 47–48).  The defense also presented testimony regarding the theft from Amber Lake, as well as testimony regarding the victim's reputation for dishonesty from Tyler Lake (*id.* at 111–12, 117).  The "white rabbit" comment was simply a comment on the evidence and an expression of the conclusion the prosecutor contended the jury should draw from the evidence, that is, the defense's "fabrication to cover up the theft" theory was an irrelevant distraction from the molestation that occurred.

The prosecutor's comment that Petitioner was in a "perfect position to be a predator" was made in the following context during rebuttal:

> Ladies and Gentlemen, at this point all I can ask of you is follow the evidence, that you follow it with common sense.  You don't give anymore deference to this man because he goes to church, because he helps some people.  You look at the way someone like that is in a perfect position to be a predator.  He's in a position where he has access to kids, parents trust him.

(Ex. B at 168).

This was a proper comment on the evidence.  The victim's stepfather testified that Petitioner was the guardian of some of the victim's friends (Ex. B at 51–52).  He testified the victim had been "hanging out" with Petitioner for two or three months and had "sleepovers" at Petitioner's house (*id.*).

Tyler Lake, a teenager, testified he met Petitioner at church and had known him for several years (Ex. B at 115–16).  He testified Petitioner had taken his family into his (Petitioner's) home

---

[5] Decisions rendered by the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981 are binding as precedent on the Eleventh Circuit.  <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981).

when Lake's mother went to jail, and Petitioner fed the family when Lake's father was out of work (*id.* at 117–18).  Lake testified he felt that he and his family "owed him a lot" (*id.* at 118).  He testified Petitioner hugged him and "cuddled up" to him (*id.* at 119).  He testified he had slept in Petitioner's bed with him, and sometimes slept "right up against" Petitioner (*id.*).

Petitioner testified he never invited boys to spend the night in his bed, but "they just jump in" (*id.* at 125).  He testified a big screen television and VCR were in his bedroom, so kids would come in his bedroom to watch a movie and end up sleeping on the bed (Ex. B at 125–26).  Petitioner testified he did not permit Amber Lake to sleep in his bed "because it's inappropriate to have the girl in the bedroom with the boys," but at that time, it did not seem inappropriate to allow the boys to sleep in his bed (*id.*).  Petitioner testified he drove the church's van for a church program and for the children's choir (*id.* at 126).  Petitioner testified the boys were "like my own kids" (*id.*).  He testified they were sometimes affectionate with him, even in bed (*id.* at 126–27).  Petitioner testified he wore boxer shorts to bed, even when boys were in bed with him (*id.* at 127).

Given this evidence, the prosecutor's comment that someone like Petitioner was "in a perfect position to be a predator" suggested an inference which the jury could reasonably draw.  Therefore, it was not improper.

With regard to the prosecutor's remarks that Petitioner failed to deny commission of the crime, to the extent Petitioner contends the remarks constituted an improper comment on his right to remain silent, he failed to show a meritorious basis for an objection by defense counsel.  As the state court found, the "failure to deny" reference was a proper comment on Investigator Robert Guy's testimony regarding a non-custodial interview with Petitioner (*see* Ex. B at 92–101, Ex. L at 162–64), and not occasioned as an exercise of Petitioner right to remain silent during a custodial interrogation.  The comment was also proper in light of the victim's stepfather's testimony that Petitioner did not deny or attempt to explain the allegations when he (the victim's stepfather) confronted Petitioner with them (*id.* at 56–58).  Therefore, defense counsel had no meritorious basis for objecting to the prosecutor's closing argument as an improper comment on Petitioner's post-arrest silence.

Petitioner's argument that the remarks concerning Petitioner's failure to deny the allegations improperly shifted the burden of proof (*see* doc. 2 at 12) is also without merit.  As previously

discussed, the prosecutor's remarks were permissible comments on the testimony of the victim's stepfather and Petitioner's statements to Investigator Guy (*see* Ex. B at 154–58).  Furthermore, the trial court cured any suggestion that anyone but the State had the burden of proof by clearly instructing the jury on the following points:  (1) to convict Petitioner, the State was required to prove the elements of each crime beyond a reasonable doubt, (2) Petitioner was not required to present evidence or prove anything, (3) if the jury had a reasonable doubt as to whether Petitioner committed the offenses, they should find him not guilty, (4) a reasonable doubt as to guilt could arise from the evidence, conflict in the evidence, or lack of evidence, and (5) it was the jury's duty to decide what evidence was reliable (*id.* at 168–76).  *See* <u>Simon</u>, 964 F.2d at 1087 (although prosecutor's remarks were probably improper, the district court rendered any error harmless by the repeated instructions to the jury that the defendant had no burden to produce any evidence); <u>Duncan v. Stynchcombe</u>, 704 F.2d 1213 1216 (1th Cir. 183) (prosecutor's comment on the failure of the defense to counter or explain the testimony presented or evidence introduced did not shift burden of proof to the defendant, because any possible prejudice which might otherwise have resulted from the comments was cured by the court's instructions regarding the burden of proof).

Petitioner failed to show that defense counsel's failure to object to the prosecutor's comments constituted deficient performance, or that there is a reasonable probability the jury would have acquitted him if counsel had objected.  Therefore, the state court's adjudication of Petitioner's claims was not an unreasonable application of <u>Strickland</u>.

E.      <u>Ground Five:  Defense counsel was ineffective for failing to object to the prosecutor's improper comments at sentencing and failing to object to the court's sentencing him pursuant to the Jessica Lunsford Act.</u>[6]

Petitioner asserts the prosecutor improperly remarked about unsubstantiated allegations of improper conduct with other teenage boys in arguing that Petitioner should receive a lengthy prison sentence, and the comments "disturbed the sentencing judge from his position of neutrality" (doc. 2 at 13).  He contends defense counsel should have objected to the comments as improper character evidence (*id.* at 13–14).  Petitioner further contends counsel should have objected to the sentencing

---

[6] This court has summarized Petitioner's claim from his argument in his supporting memorandum (doc. 2 at 13–14).  Petitioner did not assert a Ground Five in his habeas petition (*see* doc. 1).

court's sentencing him pursuant to the Jessica Lunsford Act, on the ground that Petitioner did not qualify as a sexual predator (*id.* at 14).

Respondent contends the state court's adjudication of Petitioner's ineffective assistance of counsel claim was not contrary to or an unreasonable application of clearly established federal law (doc. 14 at 21–22).[7]

        1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

        2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground 5 in his Rule 3.850 motion (Ex. L at 7). The state circuit court adjudicated the claim as follows:

> The Court finds that the Defendant's claims that the State made improper arguments to the Court at sentencing could have been raised on direct appeal. Thus, those claims are procedurally barred. Fla. R. Crim. P. 3.850(c).

> With regards to the Defendant's claim of ineffective assistance of counsel, there is no reasonable probability that any objection to the State's argument by Defendant's counsel would have changed the sentence the Defendant received. The potentially improper argument made by the prosecutor concerns prior allegations made against the Defendant that did not result in a conviction. [reference to sentencing transcript]; see <u>Reese v. State</u>, 639 So. 2d 1067 (Fla. 4th DCA 1994).

> As to the State's argument relating to prior allegations of sexual misconduct, the State was clearly referring to certain proposed <u>Williams</u> rule evidence the State had attempted to have admitted into evidence and other allegations mentioned by the Defendant himself during his interview with law enforcement. [reference to State's Notice of Intent to Use Other Crimes, Wrong, or Acts of the Defendant in Accordance with the Williams Rule (90.404) and transcript of videotaped interview of Petitioner]. The Court, in ruling that this purported <u>Williams</u> rule evidence was

---

[7] Respondent argues to the extent Petitioner raises a due process challenge to the prosecutor's comments during sentencing, separate and distinct from his ineffective assistance of counsel claim, the state postconviction court correctly determined the claim was procedurally barred, because it could have been raised on direct appeal (doc. 14 at 17–19). Respondent concedes Petitioner raised the claim in his pro se initial brief on direct appeal, after defense counsel filed an <u>Anders</u> brief (*id.*). However, Respondent contends Petitioner's briefing did not constitute presentation of the merits of a non-frivolous claim, because had the First DCA deemed it non-frivolous, it would have directed original counsel to brief the issue or appointed successor counsel (*id.* at 19). Therefore, a due process claim is unexhausted (*id.* at 17–19). Respondent additionally contends the claim is not cognizable in federal habeas, because it is purely a state law claim, even though Petitioner couched it in terms of due process (*id.* at 20–21).

inadmissible, was clearly already aware of the existence of the allegation. [reference to docket sheet summary and trial transcript].

However, there is no indication in the record whatsoever that the Court considered these prior allegations in sentencing the Defendant. [reference to sentencing transcript]. "It is logical to presume that the trial court's exposure to evidence that the court recognized as inadmissible would not be considered by the court in rendering its determination." Petion v. State, [48 So. 3d 726,] 35 Fla. L. Weekly S597 (Fla. October 21, 2010).

In the absence of any indication that the Court considered these prior allegations in sentencing the Defendant, the Defendant's claim that the trial court considered improper factors in sentencing the Defendant would be based on nothing but speculation. Post conviction relief cannot be based upon speculative assertions. Jones v. State, 845 So. 2d 55, 64 (Fla. 2003). Indeed, the record shows that the Court considered the presentence investigative report, letters on the Defendant's behalf, witnesses on the Defendant's behalf and the Defendant's statements to the Court. The Court stated that "it sounds like you have done a lot of good things, you know, for your church especially." [reference to sentencing transcript].

However, the Court continued, explaining, "the victim in this case was very believable. I mean, his testimony, sir, had what I would refer to as a ring of truth." Id. The Court stated that it was "of the opinion that the evidence clearly substantiates and supports the guilty verdict." Id., at 23. The Court made no mention of any allegations unrelated to this case. [reference to sentencing transcript]. As there is no indication that the Court considered unsubstantiated and unrelated allegations of misconduct in imposing sentence, there is no basis for a claim that Defendant was denied the effective assistance of counsel due to counsel's failure to object to the State's argument concerning said allegations.

Finally, the Court would note that the Defendant was not designated to be a "sexual predator," but rather a "sexual offender." [reference to Judgment and Sentence and sentencing transcript]. Further, the record conclusively demonstrates that the Jessica Lunsford Act applies. § 948.30, Fla. Stat.; [reference to Judgment and Sentence and charging document]. Thus, counsel was not deficient for not arguing the Act did not apply.

(Ex. L at 58–60).

Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. M).

At sentencing, the prosecutor made the following arguement in support of her position that Petitioner should received a harsher sentence than the lowest permissible guidelines sentence of twenty-one (21) months:

> I have reviewed all of the letters . . . and as I read them, . . . I wanted to show the video of the defendant's own words about his life and all the prior allegations with boys and the fact that he never did anything to correct his behavior.
>
> . . . All those people seem to think that he is a good person and he may very well be.  But as a Christian, he knows that a good man can do bad things.  When they do bad things, they have to own up to it and they have to take their punishment.  And, in this case, Your Honor, this defendant needs to be sent away and it needs to be for a long time.
>
> There are ways to prevent children from being molested in this society.  Parents need to supervise their children.  And, in this case, even after there has been allegations made against this man, some people gave him free open access to their children, and it was in that context that they ended up in the defendant's home.
>
> I think at the trial, [the victim's] stepfather had a chance to speak, and one of the things that he said that really touched my heart was that he checked the sex offender site.  He was doing the best he can in today's society to say let me see if this man is okay.  He didn't see a registration.  He thought the man was okay. . . . And this defendant has violated the trust that the families placed on his, and also the people at his church.
>
> So I would ask this Court to do three things:  [t]he first is to impose a substantial state prison sentence on this defendant; second, is any balance of the 15 years that this defendant does serve in prison, he should be placed on probation with GPS monitoring; and the third is to classify the defendant as a sex offender pursuant to Florida Statutes 943.0435, Your Honor.
> . . . .
> Your Honor, I believe that it is warranted, it will help protect the public, and it will make sure that this defendant pays for the crime that he has committed and he has been convicted of by a jury.

(Ex. A at 63–65).

The state court found as fact that there was no indication in the record that the sentencing court considered prior allegations of misconduct in sentencing Petitioner.  Petitioner has not shown by clear and convincing evidence that this finding was unreasonable.  Further, the sentencing transcript supports the state court's finding.  The transcript demonstrates that the sentencing court

considered the presentence investigation report (which did not include reference to any prior allegations of misconduct (*see* Ex. A at 19–26)), the letters from Petitioner's supporters, the testimony of his supporters, Petitioner's statements during sentencing, the victim's trial testimony, and the jury's verdict (*id.* at 65–66).  Therefore, although the prosecutor referenced prior allegations of misconduct, Petitioner failed to show that the sentencing court considered the prior allegations in imposing sentence.  In the absence of a showing that the prosecutor's reference to the prior allegations had any adverse effect on his sentence, Petitioner failed to show he was prejudiced by defense counsel's failure to object.

Petitioner likewise failed to show ineffective assistance with regard to the sentencing court's determination that Petitioner qualified for sentencing under Jessica Lunsford Act, 2005 Fla. Sess. Law Serv. Ch. 2005-28.  The requirements of the Act imposed upon Petitioner by the sentencing court (*see* Ex. A at 82–85) applied to persons convicted of violating Florida Statutes § 800.04, and other criminal statutes.  *Id.*  Petitioner was convicted of violating Florida Statutes § 800.04(5)(c)2. (*see* Ex. A at 1, 14, 74).  Therefore, the court properly determined Petitioner qualified for sentencing under the Act.  Petitioner failed to show defense counsel had any arguable basis to object to the court's subjecting Petitioner to the provisions of the Act, or that his sentence would have been any different if counsel had objected.  He thus failed to show the state court's adjudication of Ground Five was contrary to or an unreasonable application of clearly established federal law.

Finally, to the extent Petitioner raises a separate and distinct claim that the sentencing court violated his due process rights by considering prior allegations of misconduct and subjecting him to certain provisions of the Jessica Lunsford Act, his claim should be denied notwithstanding the exhaustion issue.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  As discussed *supra*, Petitioner failed to show that the sentencing court considered the prior allegations in imposing sentence.  He also failed to show he was improperly sentenced under the Jessica Lunsford Act.  Therefore, he failed to establish a due process violation.

IV.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant,"

and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.     That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.     That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 5th day of July 2012.

/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**